| | |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| LAURA J. DOANE, | |
|---|---|
| Plaintiff, | CASE NO.  **C07-5455RBL** |
| v. | REPORT AND RECOMMENDATION |
| MICHAEL ASTRUE, Commissioner of Social Security Administration, | Noted for May 30, 2008 |
| Defendant. | |

This matter has been referred to Magistrate Judge J. Kelley Arnold pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by <u>Mathews, secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). This matter has been briefed, and after reviewing the record, the undersigned recommends that the Court affirm the administrative decision.

## INTRODUCTION

Plaintiff, Laura Doane, was born in 1961. She completed the 11th grade of high school, and later received her GED. Plaintiff has past relevant work experience as a hotel clerk or receptionist. She has one sibling, and she has never married. However, she has had a couple of extended relationships which, in two situations, ended at the boyfriend's suicide – once in 1994, and the other in 1999.

Plaintiff applied for social security benefits on August 27, 2003. Plaintiff alleges disability and an inability to work since March 23, 1999, due to back pain, neck pain, pain and numbness in the extremities, a partial amputation of the third left hand finger, and anxiety. The administration denied the

1  application, after a hearing before an administrative law judge ("ALJ").  The ALJ issued his decision on
2  December 28, 2006.

3        Plaintiff filed the instant Complaint with the Court on August 28, 2007,  challenging the denial of
4  her applications for social security benefits.  Specifically, Plaintiff contends: (1) the ALJ failed to
5  properly consider Plaintiff's testimony regarding her symptoms and limitations; (2) the ALJ erred by
6  discrediting examining physicians opinions; (3) the ALJ erred by discrediting the DSHS physical
7  evaluations; (4) the ALJ erred in his interpretation of the medical evidence; (5) the ALJ erred by
8  incorrectly assessing Plaintiff's residual functional capacity ("RFC"); and (6) the ALJ erred by failing to
9  incorporate all of Plaintiff's impairments in the hypothetical posed to the vocational expert and by
10 disregarding the hypothetical posed to the vocational expert by Plaintiff's representative at the hearing.

11       After reviewing the record, the undersigned finds the ALJ properly considered the two primary or
12 threshold issues – the ALJ's review of the  medical opinion evidence and plaintiff's credibility.
13 Accordingly, the ALJ's decision is properly supported by substantial evidence and free of legal error.

14 DISCUSSION

15       This Court must uphold the determination that plaintiff is not disabled if the ALJ applied the
16 proper legal standard and there is substantial evidence in the record as a whole to support the decision.
17 Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).  Substantial evidence is such relevant evidence
18 as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S.
19 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than a scintilla but less
20 than a preponderance.  Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v.
21 Sullivan, 772 F. Supp. 522, 525 (E.D. Wash. 1991).  If the evidence admits of more than one rational
22 interpretation, the Court must uphold the Secretary's decision.  Allen v. Heckler, 749 F.2d 577, 579 (9th
23 Cir. 1984).

24 *A.  THE ALJ PROPERLY CONSIDERED PLAINTIFF'S CREDIBILITY*

25       Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991) (*en banc*), is controlling Ninth Circuit authority
26 on evaluating plaintiff's subjective complaints.  Bunnell requires the ALJ findings to be properly
27 supported by the record, and "must be sufficiently specific to allow a reviewing court to conclude the
28 adjudicator rejected the claimant's testimony on permissible grounds and did not 'arbitrarily discredit a

Page - 2

1  claimant's testimony regarding pain.'" Id. at 345-46 (quoting Elam v. Railroad Retirement Bd., 921 F.2d
2  1210, 1215 (11th Cir. 1991)). When a claimant produces evidence of an underlying impairment that
3  could reasonably produce pain or other symptoms, the ALJ can only reject claimant's testimony about the
4  severity of his or her symptoms with "specific findings stating clear and convincing reasons for doing so."
5  Smolen v. Chater, 80 F.3d 1273, 1281-82, 1284 (9th Cir. 1996).

6       An ALJ may reject a claimant's subjective complaints, if the claimant is able to perform
7  household chores and other activities that involve many of the same physical tasks as a particular type of
8  job. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). However, as further explained in Fair v. Bowen,
9  *supra*, and Smolen v. Chater, *supra*, at 1288 (9th Cir. 1996), the Social Security Act does not require that
10 claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily
11 transferrable to a work environment where it might be impossible to rest periodically.

12      Here, Plaintiff argues the ALJ failed to cite specific reasons for discrediting Plaintiff's allegation
13 that she is unable to perform all regular, sustained work activity. The undersigned disagrees. The ALJ
14 assessed Plaintiff's residual functional capacity, and in doing so, he properly addressed the issue of
15 Plaintiff's allegations suggesting total disability. The ALJ explained his findings in detail, writing the
16 following:

17     At the hearing, the claimant testified that she is unable to engage in work activity due to numbness in both hands, upper extremity pain, back pain, neck pain, and panic attacks.
18     Ms. Doane testified that standing more than 30 minutes causes pain. She can sit up to 60 minutes, then must stand for 15-20 minutes, and then sit for a short amount of time. She
19     can lift five pounds, but not continuously, and cannot user her hands on a repetitive basis. She has experienced the suicide of five loved ones and is attending a bereavement course
20     once a week. She does not do well with stress and isolates herself at times. She is not taking medication for panic attacks.
21

22     I have considered all the medical evidence and conclude that the evidence establishes that the claimant has severe neck pain due to degenerative disc disease of the cervical spine and a panic disorder with agoraphobia. However, the claimant has the retained residual
23     functional capacity to lift 10 pounds frequently and 20 pounds occasionally, stand/walk 6 to 8 hours, and sit 6 of 8 hours. She can frequently climb ramps/stairs and occasionally
24     climb ladders/ropes/scaffolds. She can frequently balance and stoop and occasionally kneel, crouch and crawl. She should avoid concentrated exposure to vibration and hazards.
25     She has no manipulative limitations. From a mental standpoint, the claimant is moderately limited in the ability to interact appropriately with the general public. She has the ability
26     to perform both simple as well as more complex tasks and instructions and would be able to accept instructions from supervisors without too much difficulty. Crowded situations
27     would cause panic symptoms, but treatment might alleviate these symptoms. She can perform tasks on a consistent basis without special modifications, and would be best in a
28     work setting where she would not have to interact with the public on a regular basis. She can complete at least part time work and likely full time work without interruption from

>her psychiatric illness.
>
>In support of the above, the undersigned notes the lack of ongoing and significant objective clinical findings which would warrant a finding of disability. None of the claimant's treating physicians have described the claimant as suffering from a significant impairment which would render her unable to engage in substantial gainful activity. Though the claimant alleges that she has a great deal of back, neck and upper extremity pain which limits her ability to stand, sit and walk, the medical records show no indication of muscle wasting, deformity, gross muscle atrophy or neurological deficits. Treating physician records indicate the claimant was treated conservatively for her complaints, with no indication that her complaints were deemed of sufficient severity to refer her to a specialist or for further diagnostic testing. Despite the claimant's allegations of severe back pain, examination has been within normal limits. A thoracic spine x-ray in February 2001 showed evidence of a mild dextroscoliotic curve. No compression fractures were seen. (Exhibit 4F). In April 2005, Doctor Farjardo noted that examination of the back showed a normal range of motion. The lumbar spine was straight, and straight leg raising was negative. The claimant was neurologically intact. (Exhibit 13F). There is no evidence of ongoing treatment for back pain.
>
>The allegations of pain and numbness in the upper extremities which prevents the claimant from performing repetitive activity with the hands is not supported by the record. The record shows that the claimant was treated for a partial amputation of the distal part of her left middle finger in January 2005 in an accident; however, there is no indication that she received ongoing treatment following this injury. The record shows that the claimant underwent right carpal tunnel release in March 2006. Follow-up records show the incision was thoroughly healed, with no signs of infection. In April 2006, the claimant appeared pleased with the results of her surgery. (Exhibits 17F, 19F). Physical therapy records in May 2006 indicate the claimant reported an overall improvement rating of 70%, and reported decreased pain and improved ability to perform activities of daily living. (Exhibit 10F). The medical records do not document evidence of a severe impairment, nor was there any suggestion by any physician that her complaints had resulted in any restriction in her ability to function.
>
>[Omitted]
>
>Ms. Doane was diagnosed with a panic disorder with agoraphobia. Her Global Assessment of Functioning (GAF) was 65, which is indicative of only some mild mental limitations. The examiner opined that the claimant has the ability to perform both simple as well as more complex tasks. In fact she takes a great deal of pride in being able to cook for herself, perform some gardening, and do tasks as well as work on the computer. She seemed to be quite intelligent. She enjoys reading and likely would be able to learn and complete fairly complex tasks. Doctor Reuther opined that the claimant is able to accept instruction without difficulty. Working in crowded situations may induce some panic symptoms, but she could work at jobs without much public exposure. With treatment, it is likely she would be able to complete a full work week without interruptions form her psychiatric illness. (Exhibit 5F).

(Tr. 18-19).

The ALJ reasons - lack of medical evidence to support total disability, inconsistencies in Plaintiff's testimony and his demeanor at the hearing, and Plaintiff's daily activities – are clear and convincing. In particular, as noted above, the ALJ cited the medical evidence of record as well as Plaintiff's activities of daily living. As further explained below, the ALJ properly weighed and

REPORT AND RECOMMENDATION
Page - 4

interpreted the medical evidence, which does not support a finding of disability.   The ALJ properly discounted Plaintiff's allegations of total disability.

**B. THE ALJ PROPERLY ASSESSED THE MEDICAL EVIDENCE**

The ALJ is entitled to resolve conflicts in the medical evidence. Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987).  He may not, however, substitute his own opinion for that of qualified medical experts. Walden v. Schweiker, 672 F.2d 835, 839 (11th Cir. 1982).  If a treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so. Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983). " The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1996).  In Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989), the Ninth Circuit upheld the ALJ's rejection of a treating physician's opinion because the ALJ relied not only on a nonexamining physician's testimony, but in addition, the ALJ relied on laboratory test results, contrary reports from examining physicians and on testimony from the claimant that conflicted with the treating physician's opinion.

Here, Plaintiff contends the ALJ improperly evaluated the medical evidence, particularly the opinions and records  provided by Dr. Brzenzinski-Stein, Dr. Ratcliffe, Dr. Lysak, Dr. Fjardo, and Dr. Lee.  After reviewing the record and the ALJ's decision, the undersigned concludes the ALJ reasonably interpreted the medical evidence, which is inconsistent.

The ALJ, who is charged with reviewing the record as a whole in the context of the social security definitions and process of determining disability, concluded Ms. Doane retained the ability to perform work as a surveillance system monitor and clerical addresser (Tr. 22). Substantial medical evidence supports the ALJ's residual functional capacity assessment consistent with these vocations.

As noted above, the ALJ cited to many of the medical opinions that do not support a finding of disability in this case. The ALJ first summarize Plaintiff's medical history, specifically noting records from Dr. Wiese, Dr. Brown, Dr. Farjardo, Dr. Lee, Dr. Zhu, Dr. Reuther, Dr. Brzezinski-Stein, and Dr. Ratcliff (Tr. 15-18).  The ALJ then explained why he accepted certain opinions rather than others.  For example, he wrote:

> In April 2005, Doctor Farjardo diagnosed the claimant with a generalized anxiety disorder. (Exhibit 13F). In June 2005, the claimant was prescribed medication for anxiety. She denied depression. She was continued on Ativan, to be used on an as-needed basis (Exhibit 19F/17-18). At the hearing, the claimant testified that she was not taking medication for panic attacks, although the record shows that her anxiety symptoms are decreased with psychotropic medication.
>
> I note that the psychological reports performed by Doctors Brzenzinski-Stein and Ratcliffe, performed in November 2004 and March 2005 assessed significant functional mental limitations. Despite these findings, the undersigned finds that there are no supporting findings contained in their assessments report or elsewhere in the record. These examiners also did not cite objective findings that relate to the restrictions assessed; and their conclusions appear to be based upon the claimant's subjective complaints. Their minimal findings noted at the time of their written statements are not consistent with the extreme limitations assessed, nor are they consistent with the findings in the other evidence of record, as described above. Since the overwhelming weight of the treating physicians and the findings of the consultative psychiatric specialist refute these conclusions, they are accorded no evidentiary weight. (Exhibits 11F, 12F). As described previously, such extreme findings were not found in the comprehensive and detailed report of the psychiatric specialist. The findings of Dr. Reuther are well supported by the medical evidence and other evidence, and are consistent with the balance of the record. In addition, his findings are based on his review of the claimant's medical records, mental status testing, and psychological testing. (Exhibit 5F).

(Tr. 19-20).

Review of the medical record supports the ALJ's analysis. Dr. Brzezinski-Stein and Dr. Ratcliff opinions were largely in the form of check-box forms with few comments appended. Such forms are traditionally disfavored in Social Security litigation because they do not afford the reviewer the full context of the physician's opinion. Individualized medical opinions are preferable. *See* Murray v. Heckler, 722 F.2d 499, 501 (9th Cir. 1983) (expressing preference for individualized medical opinions over DDS check-off reports); *cf.* Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ permissibly rejected three psychological evaluations because they were check-the-box reports that did not contain explanations of the bases of their conclusions).

As for the opinions of Dr. Lee and Dr. Farjardo, the ALJ noted that Dr. Farjardo found Plaintiff to have a normal range of motion, a straight lumbar spine, and to be generally neurologically intact as of April 2005 (Tr. 18-19, 245-253). While Dr. Lee limited Plaintiff to sedentary work due to limitations in her right arm secondary to carpal tunnel syndrome, the ALJ noted that contemporaneous reports from Plaintiff's treating physicians indicated improvement due to a carpal tunnel release surgery. (Tr. 19, 285-314, 344-402).

Plaintiff argues for a more favorable interpretation of the medical evidence. However, the ALJ's

1 interpretation was reasonable and properly supported. "When the evidence before the ALJ is subject to more than one rational interpretation, [the court] must defer to the ALJ's conclusion." <u>Batson v. Comm'r of Soc. Sec. Admin.</u>, 359 F.3d 1190, 1193 (9th Cir. 2004).

<u>CONCLUSION</u>

Based on the foregoing discussion, the Court should affirm administrative decision. After reviewing the record, the undersigned finds no error in the two threshold issues. First, the ALJ properly discounted Plaintiff's testimony regarding the severity of his impairments, and second, the ALJ properly assessed the medical evidence. Accordingly, the undersigned also finds no error in the ALJ evaluation of Plaintiff's residual functional capacity, Plaintiff's ability to perform past relevant work or other certain types of work. Plaintiff's arguments that the ALJ erred in those findings is erroneously premised on the arguments that the ALJ failed to properly review the medical evidence and/or Plaintiff's credibility.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **May 30, 2008**, as noted in the caption.

DATED this 5th day of May, 2008.

                        /s/ J. Kelley Arnold
                        J. Kelley Arnold
                        U.S. Magistrate Judge